HELD v. AUERBACH.

(Supreme Court, Appellate Term. May 5, 1904.)

1. PRINCIPAL AND AGENT—EXISTENCE OF RELATION—EVIDENCE—SUFFICIENCY.
    In an action for labor performed and materials furnished in the construction of a building, evidence *held* insufficient to show that the one with whom plaintiff contracted as principal was in fact merely the agent of defendant.

Appeal from City Court of New York, Trial Term.

Action by Henry Held against Mayer S. Auerbach. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and LEVENTRITT and GREENBAUM, JJ.

L. Laflin Kellogg, for appellant.
Thaddeus D. Kenneson, for respondent.

GREENBAUM, J. Plaintiff concededly performed certain work, labor, and services, and furnished certain materials, in connection with the construction of a building on the southwest corner of Bleecker and Wooster streets, at a stipulated price, under an agreement made with one Ritterbusch, as principal. It is sought to hold the defendant liable as the real or undisclosed principal, upon the theory that, although Ritterbusch ostensibly acted as principal, he was in reality and fact the agent of the defendant. The question to be here determined is whether the testimony adduced upon the trial warranted a finding against the defendant. There can be no doubt that, if no competent proof was submitted from which it may be inferred that the defendant was in fact the principal in the transaction, then the verdict of the jury in favor of plaintiff should not be sustained.

It was established that the defendant purchased the premises on Bleecker street subject to a mortgage of $45,000, giving in exchange

certain property on Twenty-Third street, which was subjected to a mortgage of $53,000; that the defendant valued his equity in the property conveyed by him in exchange at $20,000; that, before taking title to the Bleecker property, he contracted in writing to sell it to Ritterbusch for $74,250, the latter to assume and agree to pay the mortgage thereon for $45,000, and to execute to the defendant a bond for $29,250, the balance of the purchase price to be secured by mortgage on the premises; that, simultaneously with the delivery of the deed from defendant to Auerbach, Ritterbusch was to execute his bond for $40,000, to be secured by mortgage on said premises, under a building-loan agreement, which was also executed between these parties, by which Ritterbusch agreed that he would, immediately upon acquiring possession of the property, begin the erection of a building of the character particularly described in the agreement, and the defendant agreed to advance $40,000 in installments as the work progressed, the building agreement containing the numerous and detailed provisions peculiar to such instruments. Ritterbusch proceeded to erect the building, and, failing to meet obligations incurred therewith, several mechanic's liens were filed against the premises during the months of January, February, May, and June, 1901, aggregating upwards of $10,000. Ritterbusch also gave a mortgage upon the premises, to secure the sum of $6,194.31, to one Mooney, for brick furnished for the building, and one for $800 for fireproofing materials. The defendant assigned an interest in his building-loan mortgage on March 7, 1901, and on January 21, 1901, assigned the purchase bond and mortgage to one Guggenheimer, his brother-in-law, for a nominal consideration, the assignment being recorded June 13, 1901. On June 12, 1901, Guggenheimer began an action to foreclose the assigned mortgage, and took such further proceedings that a sale in foreclosure resulted on November 22, 1901, whereby the property was bought in by Auerbach through one Maurice Early, admittedly a "dummy"; and the defendant thereafter sold the property, taking in exchange other property. It also appeared that Ritterbusch was a man of no financial means; that he had no bank account; that he obtained from a friend a loan of $1,000, which he deposited as security for the faithful performance of his building-loan contract with the defendant when he took title to the Bleecker street property; that Ritterbusch was practically unknown to defendant when he entered into the contracts mentioned; that many workmen and contractors were paid by orders on defendant for money coming to him under the building-loan contract. Testimony was adduced that on one occasion the defendant, when at the building, asserted to one of the men engaged in work there that he was the owner, and also that the defendant negotiated with the firm of Schnatz & Massoth for elevator gratings and for other ironwork, aggregating in all $186, and guarantied the payment of said work. The correspondence between Schnatz and Massoth and the defendant shows that the latter did not represent himself as the owner, but, on the contrary, he explicitly gave them to understand that he was not the owner.

The facts have been thus fully detailed in order that it may be determined if they justify the conclusion that Ritterbusch was in reality the agent of the defendant. Outside of the isolated instance when defend-

ant stated to a party at the building that he was the owner—a statement which, in view of the circumstances bearing upon this testimony, merits but scant consideration as a serious piece of evidence of ownership— there is absolutely not a scintilla of proof, either direct or remote, from which an agency can be deduced. The payments made on orders of Ritterbusch to defendant, and the contract for ironwork with Schnatz & Massoth, made through and guarantied by defendant, are entirely consistent with the deep interest that the defendant would naturally have in the successful prosecution of the work. There is not the slightest proof or suggestion that the defendant had prearranged a plan or scheme with Ritterbusch whereby the latter was to take title, enter into a formal building-loan agreement, and make contracts for the erection of a building, so that the defendant might receive the benefits of the building contracts and escape liability thereunder. Unless the facts and circumstances disclosed at the trial can be construed as evidence of some understanding between Ritterbusch and the defendant whereby Ritterbusch was merely used as a dummy to enable the defendant to have a building erected without fully paying for the labor and materials employed in its construction, it cannot be said that Ritterbusch was defendant's agent. It is evident that Ritterbusch was pecuniarily irresponsible, and took the chance of erecting a building on credit, and of reaping whatever advantage or profit might result, without any control or interference on the part of the defendant. The argument of the learned counsel for the respondent might, at best, tend to show that the defendant may not have been inspired with a high sense of moral obligation toward the materialmen and others from whom Ritterbusch was enabled to secure credit, in that he was ready to deal with a man of whom he knew little or nothing, and permit him to enter into contracts from which he might eventually profit, or that defendant may have had a lively expectation of gain in the failure of Ritterbusch in his undertaking, at the expense of those who trusted the latter. But from such a state of affairs it cannot be said that Ritterbusch was the agent of defendant. While it might be well if some scheme of legislation could be devised which might provide a method of enforcing a liability against those who recklessly or deliberately convey real property to irresponsible persons with building-loan contracts, with the expectation and intention of unconscionably profiting through the inability of the irresponsible purchaser and builder to complete the building and pay his debts, I know of no existing law which will enable one who has performed labor for or furnished materials to a conscienceless or unscrupulous builder to hold the building-loan mortgage liable for the unpaid obligations of the builder, unless, of course, it can be shown that the builder was a myth or tool of the real owner, who shielded himself behind the cover of a pretended building-loan mortgage. In the case before us there was no competent proof which either directly or inferentially would permit the conclusion that defendant was the undisclosed principal of Ritterbusch.

Judgment reversed and new trial ordered, with costs to appellant to abide the event. All concur.